IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DONNELL FLOURNOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:12-CV-286-WHA |
| | ) | [WO] |
| IRVIN HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff Donnell Flournoy ("Plaintiff"), a former[1] state inmate, challenges the constitutionality of actions taken against him during his incarceration at the Kilby Correctional Facility ("Kilby") in Mt. Meigs, Alabama. The only remaining defendant is Irvin Harris ("Defendant"), and Plaintiff complains that on March 19, 2012, Defendant subjected Plaintiff to excessive force, in violation of Plaintiff's rights under the Eighth Amendment.[2] Plaintiff seeks damages and demands a jury trial.

In accordance with the orders of the court, Defendant filed a special report and supporting evidentiary material in response to the allegations contained in the complaint. *Doc. Nos. 10, 15.* The court then informed Plaintiff that Defendant's special report, may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff

---

[1] During the pendency of this action Plaintiff was released from custody. *Doc. No. 24* (updated address).

[2] The Court dismissed the remainder of Plaintiff's claims and Defendants Commissioner Thomas, Warden Barry, and Deputy Warden Edwards on June 4, 2012. *Doc. No. 14, adopting Report & Recommendation, Doc. No. 11.*

the proper manner in which to respond to a motion for summary judgment. *Doc. No. 16.* Plaintiff filed a response to the special report filed by Defendant. *Doc. Nos. 20, 20-1.* Pursuant to the aforementioned order, the court deems it appropriate to treat Defendant's reports as a motion for summary judgment. Thus, this case is now pending on Defendant's motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the Plaintiff's response, the court concludes that the Defendant's motion for summary judgment is due to be granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record,

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail

3

on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the Defendant's properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to

4

establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on his claims against Defendant Harris. *Matsushita*, 475 U.S. at 587.

## II. SUMMARY OF MATERIAL FACTS

The court views the following facts in the light most favorable to Plaintiff, the nonmoving party. Plaintiff states that he was assigned to G Dorm, and a day earlier, on

March 17, 2012, Defendant threatened Plaintiff and said he would return the next day to carry out his threat to "do something bad to the Plaintiff." *Pl's Aff., Doc. No. 20-1,* at 1. Plaintiff states he requested to be placed in a safekeeping cell for his protection from Defendant and in fear for his life. *Id.* Plaintiff avers that on March 18, 2012, he gathered his things and was moving to the safekeeping cell, when Defendant intentionally slammed a steel door against Plaintiff's head, arm, and shoulder, causing Plaintiff permanent injuries and damages. *Id.* at 2.

Plaintiff was taken to see a nurse, who prepared a body chart. *Doc. No. 15-3*, at 4. According to the body chart, Plaintiff told the nurse, "I ran into the door." The nurse observed that Plaintiff complained of "right shoulder pain, unable to raise right arm. able to move fingers." *Id.* She assessed him with "pain R/T injury." *Id.* She planned for an x-ray in the morning and instructed Plaintiff to submit for sick call the following morning. *Id.* On March 28, 2012, Plaintiff submitted a medical grievance that the nurse did not write down the correct report because it purportedly referred to a fight. *Doc. No. 20-1*, at 3. Plaintiff stated he was instead injured when Defendant slammed a door against Plaintiff. *Id.* Plaintiff does not submit further medical evidence.

On July 25, 2012, Plaintiff was paroled, and he received a thirty-day supply of pain medication, but he states he has no money to pay for the medical follow-ups ordered. *Id.* Plaintiff swears he cannot use his right arm to perform any work, he suffers pain nightly, has "physiological traumas, disorders," and cannot function in society. *Id.* at 2.

In contrast to Plaintiff's version of the events, Defendant avers that he was standing outside of G Dorm, behind the G Dorm door. *Harris Aff., Doc. No. 15-2*, at 1. Defendant states he saw the door was open, and pushed the door closed, then he saw again that the door was open and pushed it closed. *Id.* He then saw the door was open, and he looked through the door and saw Plaintiff standing at the door with his mattress on his right shoulder and a laundry bag in his right hand. *Id.* Plaintiff put down the mattress and began yelling as if he was in pain, and accused Defendant of kicking the door on Plaintiff's shoulder. *Id.* Defendant saw Sergeant Nunn enter the area Dorm yard and told Nunn about Plaintiff's statement. Defendant states he has "no knowledge of the door being slammed or inmate Flournoy being injured in any way." *Id.* Defendant wrote an incident report in which he stated Correctional Officer Kevin Chavis, who is not a defendant in this case, saw Defendant closing G Dorm's main entrance door when he felt something pushing against the door. *Doc. No. 15-3*, at 2. Defendant opened the door and saw Plaintiff with his property at the door, and Plaintiff said he needed medical attention after Defendant struck Plaintiff with the door. *Id.* After Sergeant Nunn arrived and Plaintiff left to get medical attention, Sergeant Nunn questioned several inmates, who said they did not witness the incident. *Id.* Sergeant Nunn questioned Chavis about it, and Chavis said he saw Plaintiff trying to exit through the door as Defendant closed the door, but Chavis did not see the door hit Plaintiff. *Id.* Chavis stated that Nunn later questioned Plaintiff about the incident, and Plaintiff said "he wanted to forget the about the statement that he made earlier. Inmate Flournoy stated that he ran into

the side of the door and that Officer Harris did not kick the door into him. *Id.* Sergeant Nunn obtained a statement from Plaintiff, in which Plaintiff stated Defendant "slam[m]ed the steel door on my shoulder knowingly and intentionally which has caused injuries to my shoulder and arm."

Defendant submitted the affidavit of Officer Chavis, who states that Defendant was standing outside of the door of G Dorm, holding the door closed with his hand and several inmates were knocking on the door. *Chavis Aff., Doc. No. 15-4*, at 1. Defendant opened the door, and Plaintiff was standing at the door, asking Defendant why he had to pack his stuff. Plaintiff and Defendant "continued talking for about two more minutes and all of a sudden inmate Flournoy crouched down and began shouting, 'You hurt my arm and my neck. You hit me with the door.'" *Id.* Chavis swears the following day he saw Plaintiff sitting on his bed and asked him why he made false accusations against Defendant because Chavis saw Plaintiff pick up his laundry bag with the same arm that Plaintiff said had been hurt by Defendant. *Id.* at 2. Chavis states that Plaintiff said "the reason he said Officer Harris hurt his shoulder is so he can get his Veteran's Administration benefits raised to a higher level of disability. [Chavis] advised inmate Flournoy that he was wrong for falsely accusing Officer Harris and that if he going to have on a sling, he needed to put his arm back in it and not just have the sling hanging from his neck." *Id.*

### III.  DISCUSSION

### A.  Absolute Immunity

To the extent the alleged constitutional violations Plaintiff lodges against Defendant Harris are made against him in his official capacity, he is entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the Defendant is a state actor entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B.  Qualified Immunity and Excessive Force

#### *1. Qualified Immunity*

With respect to Plaintiff's excessive force claim lodged against Defendant in his individual capacity, Defendant argues he is entitled to qualified immunity.  However, "'there

is no room for qualified immunity' in Eighth Amendment . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008) (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (heightened pleading requirement overruled by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Danley*, 540 F.3d at 1307; *see also Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly, this court will consider whether Plaintiff's allegations that Defendant used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

### 2. Excessive Force Claim

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard for evaluating such excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (relying on *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). This standard contains both a subjective

11

and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Factors to consider in making this determination include "the extent of injury suffered," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (citation omitted); *see also Whitley*, 475 U.S. 321 (listing factors); *Skrtich*, 280 F.3d at 1300-01. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. 321.

The "absence of serious injury" provides some indication of the level of force used, and the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind,'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327) (further quotation marks and citation omitted). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v.*

*Gaddy*, 559 U.S. 34, 38 (2010) (per curiam). In *Wilkins*, the Supreme Court held that an inmate stated an Eighth Amendment excessive force claim when he alleged "he was punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation,'" and he suffered "a bruised heel, back pain, and other injuries requiring medical treatment." *Id.* at 38; *see also Hall v. Bennett*, 447 F. App'x 921, 923-24 (11th Cir. 2011) (unpublished) (per curiam) (citing *Wilkins*, 559 U.S. at 37-38) ("[W]hile [plaintiff's] medical reports did not note any obvious injuries, we are mindful of the fact that the focus of the inquiry is on the nature of the force applied, not the extent of the injury."). Recognizing that the relief in such a case could be slender, the Court added that "even if [the inmate] succeeds, the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." *Wilkins*, 559 U.S. at 40.

Plaintiff avers that on March 18, 2012, Defendant slammed a steel door on Plaintiff when Plaintiff was simply walking through a hallway and showed no signs of being a threat. Defendant denies knowingly shutting the door on Plaintiff. It is true, as Defendant states, that the medical report makes no mention of a fight. But the crux of this case concerns what happened in the G Dorm doorway on Marc 18, 2012. This court must view the facts in the light most favorable to Plaintiff and draw all reasonable inferences from those facts in Plaintiff's favor. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). Defendant's version of the events are at odds with Plaintiff's own statements, including Plaintiff's statement on March 18, 2012; his March 26, 2012, grievance that the

medical person wrote his comments incorrectly; his March 28, 2012, statements in the complaint; and his August 20, 2012, affidavit. *Doc. No. 1,*; *Doc. No. 15-3,* at 6; *Doc. No. 20-1*, at 1-3. In contrast to Defendant's version of the events, Plaintiff maintains that he was not combative, abusive, or disobedient with Defendant, and that Defendant's use of force against him was unnecessary and unprovoked. Plaintiff's case is similar to the scenario in *Bennett*, where the parties present "two competing, contradictory stories of what happened," and this court cannot "improperly weigh[] the witnesses' credibility by favoring [Defendant's] account over [Plaintiff's]." *Bennett*, 447 F. App'x at 924.

Although Defendant argues that Plaintiff's injuries were not serious, Plaintiff was unable to raise his right arm after the incident, and the nurse ordered an x-ray and sick call in the morning. *Doc. No. 15-3*, at 4. The United States Supreme Court in *Wilkins* held that the minor nature of an inmate's injuries is not dispositive of an excessive force claim. *Wilkins*, 559 U.S. at 34 (Dismissal of "a prisoner's excessive force claim based entirely on . . . [a] determination that his injuries were '*de minimis*' [is improper] . . . [as it] is at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury."); *Bennett*, 447 F. App'x at 923-24. The nature of the injuries suffered by Plaintiff will, however, remain relevant to whether Harris actually used force as described by Plaintiff and whether he acted "'maliciously and sadistically.'" *Wilkins*, 559 U.S. at 40.

Viewing the facts in the light most favorable to Plaintiff, as the court must at this stage

14

in the proceedings, the court concludes Defendant is not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive Defendant's motion for summary judgment regarding the excessive force claim lodged against him. *Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the use of force and whether Defendant acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment with respect to the excessive force claim presented against Defendant in his individual capacity is due to be denied.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendant's motion for summary judgment with respect to the claims for monetary damages lodged against him in his official capacities be GRANTED as Defendant is entitled to absolute immunity from this claims;

2.  Defendant's motion for summary judgment with respect to Plaintiff's Eighth Amendment excessive force claim lodged against him in all aspects of his individual capacity be DENIED;

3.  This case be set for a jury trial before the district judge assigned to this case on Plaintiff's excessive force claim against Defendant in his individual capacity.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 16, 2015**. Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 2nd day of March, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE